(63 South. 486.)

No. 19,600.

ADKINS v. SIMS & BROWN.

(Nov. 17, 1913.)

*(Syllabus by the Court.)*

SALES (§ 193*)—ACQUISITION OF TITLE—PAYMENT OF PURCHASE PRICE.

Where A., while operating a sawmill for his own account, bought machinery in his own name, B., claiming to be owner and lessor of the plant, could not acquire title to such machinery by merely paying a part of the price thereof.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 507; Dec. Dig. § 193.*]

Appeal from Third Judicial District Court, Parish of Claiborne; B. P. Edwards, Judge.

Action by Z. F. Adkins against Sims & Brown. Judgment for plaintiff, and defendants appeal. Reversed and dismissed.

Richardson & Richardson, of Homer, for appellants. Barnette, Roberts & Goff, of Arcadia, for appellee.

LAND, J. This cause was remanded by us for decision on the merits and further proceedings according to law. 129 La. 151, 55 South. 746. On the second trial there was judgment in favor of the plaintiff, and the defendants have appealed.

The issue in this case is whether certain sawmill machinery belonged to the plaintiff, or to his son, E. E. Adkins, who had been operating the mill. Defendants claim title from the son through a sheriff's sale, and allege simulation in the transactions between the father and son.

We have reviewed the confusing and conflicting evidence in the record. It appears that the plaintiff operated several sawmills. One of these mills was turned over to his son, E. E. Adkins, and O. O. Long, who operated the same as partners. Long, a son-in-law of E. E. Adkins, testified that the plaintiff owned the mill, and that it was run under some kind of lease agreement between the plaintiff and his son, E. E. Adkins. Long subsequently retired from the partnership. The plaintiff and his son testified that there was a lease for 1906–1907 at $800, and another for 1907–1908 for $1,000, evidenced by notes, and that the plaintiff paid for nearly all the machinery purchased by E. E. Adkins, or Adkins & Long, either in cash or by credit on rent account.

E. E. Adkins conveyed the mill and machinery to Sims & Brown as security for advances made and used for the purpose of operating the plant. The machinery in question was purchased in the name of E. E. Adkins and Adkins & Long, and the fact that the plaintiff may have assisted them in paying for said machinery did not make him the owner of the same. Plaintiff, doubtless, was the owner of the original mill plant, which seems to have burned down, and of the materials that may have been used in the reconstruction of the mill on the Brown place. But he could not have been the owner of the new machinery sold to E. E. Adkins and Adkins & Long. E. E. Adkins is estopped to deny his ownership of the machinery by his written contract with Sims & Brown, and the testimony of his father on the subject-matter is confused and in several respects has been contradicted by other witnesses. An agent who sold some of the machinery to E. E. Adkins testified that the plaintiff told him that it belonged to his son. Mr. Brown, on whose lands the mill plant was erected, testified that the agreement for the location of the mill on his place was made between him and E. E. Adkins, in the presence of O. O. Long, and that E. E. Adkins told him that he had bought a new boiler for $500, of which $250 had been paid in cash. The same witness further testified that plaintiff came to his house the next day, and remained a month or more assisting in the erection of the mill, and on one occasion said to him—

"that Eddie didn't have any business buying the boiler; that the old boiler at the stand pipe

would have answered all purposes, and he tried to keep him from buying it."

The plaintiff stood by and permitted E. E. Adkins to buy machinery in his own name and to operate the mill on his own account. It is rather late in the day for plaintiff to set up a private understanding that he was to pay for the machinery in money or rents. According to plaintiff's testimony there was no lease prior to April 1, 1906. It is not pretended that E. E. Adkins ever made any sale and delivery of the machinery to his father for a fixed price. It appears from the evidence that as far back as 1902 and 1903, E. E. Adkins was buying machinery and mill supplies in his own name.

We are of opinion that the plaintiff has not made out his case with reasonable certainty.

It is therefore ordered that the judgment below be reversed, and it is now ordered that plaintiff's suit be dismissed, with costs.